UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE L. BELMONTES,<br><br>            Plaintiff,<br><br>      v.<br><br>NANCY A. BERRYHILL[1],<br>Acting Commissioner of Social Security,<br><br>            Defendant. | Case No.: 1:15-cv-01623 - JLT<br><br>ORDER DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT AND REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF JOSE BELMONTES, AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

    Jose Belmontes asserts he is entitled to a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff initially filed an application for benefits in 2008, which this Court remanded for further proceedings in 2012. Plaintiff argues the administrative law judge failed to follow the law of the case and the rule of mandate, and failed to properly review the opinion of his treating physician.

    For the following reasons, the Court finds the ALJ did not err by reevaluating the residual functional capacity upon remand. However, the ALJ erred in rejecting the opinion of Plaintiff's treating physician. Accordingly, the Commissioner's motion for summary judgment is **DENIED,** and the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant.

## PROCEDURAL HISTORY

In his applications for disability insurance benefits and supplemental security income, Plaintiff alleged his disability began October 2, 2007. (Doc. 7-3 at 18; Doc. 7-6 at 2) Plaintiff's applications were denied initially and upon reconsideration. (*See* Doc. 7-4 at 2-6; Doc. 7-5 at 2-12) Plaintiff requested a hearing, which was held before an ALJ on February 16, 2010. (Doc. 7-3 at 33) The ALJ determined Plaintiff was not disabled under the Social Security Act from March 1, 2007 though the date of the decision and issued an order denying benefits on March 29, 2010. (*Id.* at 18-27) The Appeals Council of Social Security denied Plaintiff's request for review of the ALJ's decision on October 29, 2010. (*Id.* at 2-5) Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff sought judicial review of the ALJ's decision by filing a complaint with this Court on December 21, 2010, thereby initiating Case No. 1:10-cv-02378-JLT. Plaintiff asserted that the ALJ failed to give legally sufficient reasons for rejecting the credibility of Plaintiff's subjective complaints and erred in relying upon the testimony of the vocational expert to determine that Plaintiff was able to perform work available in the national economy. (*See* Case No. 1:10-cv-02378-JLT, Doc. 12 at 7-12) The Court found the ALJ did not err in evaluating Plaintiff's credibility but found the ALJ failed to inquire whether there was a conflict between the vocational expert's testimony and the job descriptions provided in the *Dictionary of Occupational Titles.* (Case No. 1:10-cv-02378-JLT, Doc. 21 at 9-14) Accordingly, the Court remanded the matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (*Id.* at 14-15; *see also* Doc. 7-16 at 42-57)

The Appeals Council "vacate[d] the final decision of the Commissioner of Social Security and remand[ed] the case to an Administrative Law Judge" on May 2, 2013.[2] (Doc. 7-16 at 64) The Appeals Council directed the ALJ to "[o]btain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (*Id.* at 65) In addition, the Appeals Council stated:

---

[2] At the same time, the Appeals Council vacated a decision from an ALJ dated November 29, 2011, observing that the Social Security Administration erroneously issued Plaintiff a right to request a hearing twice for the same application for supplemental security income. (Doc. 7-16 at 65) The Appeals Council explained that "[t]he period at issue was the same in both decisions" and determined because Plaintiff "was not entitled to file another request for hearing on the same application, this constitutes an error of law." (*Id.*)

> The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id.*)  The Appeals Council stated that the ALJ would also "offer the claimant the opportunity for a hearing, take any further action needed complete the administrative record and issue a new decision."  (*Id.* at 66)

Plaintiff submitted additional medical evidence to the Master Docket related to his applications, including records for treatment received from 2010 through 2013, as well as a residual functional capacity questionnaire from his treating physician, Dr. Bradford Anderson, dated December 26, 2013.  (*See, e.g.*, Doc. 8-5 at 58, 62, 65, 70)  The newly assigned ALJ received these records, and they were admitted into evidence at the hearing before the ALJ on February 24, 2014.  (Doc. 7-14 at 55)

Following the hearing, on March 21, 2014, the ALJ issued an unfavorable decision finding Plaintiff was not disabled from October 2, 2007 through the date of the decision.  (Doc. 7-14 at 29, 46)  Plaintiff filed timely exceptions to the ALJ decision on April 8, 2014.  (Doc. 7-17 at 57-58)  The Appeals Council declined to accept jurisdiction, asserting that the ALJ's decision "complie[d] with the court's order and is supported by substantial evidence." (Doc. 7-14 at 2)  Therefore, the ALJ's decision became the final decision of the Commissioner on September 3, 2015.  (*Id.*)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     The ALJ's Findings in 2010**

The ALJ determined Plaintiff did not engage in substantial gainful activity from the alleged

onset date of October 2, 2007. (Doc. 7-3 at 20) Second, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and obesity. (*Id.*) The ALJ found no impairment or combination of impairments meet or medically equal one of the listed impairments. (*Id.* at 21) Next, the ALJ determined Plaintiff had the following residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) including lifting up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to 6 hours in an 8-hour workday, and sitting up to 6 hours in an 8-hour workday." (AR at 22) In addition, the ALJ set forth the following limitations:

> [H]e must be afforded the opportunity to sit and stand at will; he can only occasionally perform postural activities, but he must never climb ladders, ropes or scaffolds; he can only frequently perform activities requiring gross and fine bilateral handling, but he must not perform any activities requiring power grasping or torqueing; he can only frequently perform work requiring over-the-shoulder activity, and; he would have mild limitations in his ability to maintain pace and persistence.

(*Id.*) With this RFC, the ALJ found Plaintiff was unable to perform any past relevant work, but relied upon the vocational expert's testimony to determine there were "jobs that exist in significant numbers in the national economy that [he] can perform." (*Id.* at 25-26) Therefore, the ALJ concluded Plaintiff was not disabled, through the decision date on March 29, 2010. (*Id.* at 27)

**B.    Relevant Medical Evidence**[3]

Dr. Lavanya Bobba reviewed the record in July 2010 and completed a residual functional capacity assessment. (Doc. 8-1 at 70-74) Dr. Bobba opined that Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or about six hours in an eight-hour day, and sit about six hours in an eight-hour day. (*Id.* at 71) According to Dr. Bobba, Plaintiff had an unlimited ability to push and pull, but was limited with reaching in all directions, frequent over-shoulder activities, and frequent, handling and fingering. (*Id.* at 71-72) Dr. Bobba indicated Plaintiff could not perform any "activities requiring power grasping [or] torqueing. (*Id.* at 72) Further, Dr. Bobba determined Plaintiff was able to occasionally engage in postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling. (*Id.*)

---

[3] Upon remand, the record included medical evidence related to Plaintiff's second application. The record also contained treatment notes and medical opinions that post-dated the opinions offered by the administrative law judge in March 2010.

On November 5, 2010, Plaintiff had "L4-5, L5-S1 laminal foraminotomies and partial medial facetectomies." (Doc. 8-1 at 88)  At a follow-up appointment a week after the surgery, Plaintiff reported he was "doing well" and felt that both his pain and numbness were "improved." (Doc. 8-2 at 3)  However, Plaintiff reported he still had weakness in his right leg.  (*Id.*)

In January 2011, Plaintiff again said the "pain he had prior to surgery ha[d] improved." (Doc. 8-2 at 11)  He said he had "pain below the incision line," which was "worse when getting up from sitting or standing." (*Id.*)  Plaintiff's sensation was "4/5" in the right leg, with a reduction in sensation below the calf, and "5/5" in the left leg.  (*Id.*)

Dr. Fariba Vesali performed a comprehensive orthopedic examination on February 26, 2011.  (Doc. 8-1 at 97)  Plaintiff told Dr. Vesali that he had back pain and numbness in his right leg, and said he had "no improvement" after the surgery.  (Doc. 8-1 at 97)  Dr. Vesali observed that Plaintiff "did not have any difficulties to get on and off the examination table," or with taking off his shoes and putting them back on.  (*Id.* at 98)  She also noted that Plaintiff "did not have any difficulties to pick up a paper clip from [her] hand." (*Id.*)  Plaintiff walked with a cane, but Dr. Vesali found Plaintiff "was able to walk without the cane slowly with no particularly abnormal gait." (*Id.* at 98-99)  On the straight leg raise tests, Plaintiff "complain[ed] of low back pain with no radiation to the legs." (*Id.* at 99)  Dr. Vesali found Plaintiff had "tenderness on the scar on the lumbar spine." (*Id.* at 100)  She determined that Plaintiff's "[m]otor strength [was] 5/5 in bilateral upper and lower extremities including grip strength." (*Id.*)  He had "[d]ecreased sensation on the lateral aspect of the right knee and down to the right lateral malleosus, [but] otherwise normal light touch and pinprick sensation in bilateral lower extremities." (*Id.*)  Dr. Vesali concluded Plaintiff "should be able to walk, stand, and sit six hours in an eight-hour day with normal breaks;" do postural activities on a frequent basis; and did "not need an assistive device for ambulation." (*Id.*)  Dr. Vesali opined Plaintiff did not have manipulative limitations and "should be able to lift/carry 50 pounds occasionally and 25 pounds frequently." (*Id.*)

In March 2011, Plaintiff reported he had "continued pain but improved since surgery." (Doc. 8-2 at 13)  Plaintiff had a "normal" gait and negative straight leg raise tests.  (*Id.*)  He was directed to continue back exercises and take pain medications as prescribed.  (*Id.*)

Plaintiff complained of recent pain in his neck and right hand in April 2011, and had x-rays

taken. (Doc. 8-2 at 19, 37-38) Dr. James Ching determined Plaintiff had "[m]inimal degenerative joint disease" in his cervical spine. (*Id.* at 37) In addition, Dr. Ching found "narrowing of the joint spaces of the fingers" in Plaintiff's right hand, and concluded Plaintiff had "[m]inimal degenerative joint disease" in the hand as well. (*Id.* at 38) Plaintiff had nerve conduction studies the next month, which showed "very mild" carpal tunnel syndrome in his right hand; "borderline" carpal tunnel in the left hand; and affected senses, which may have been "due to cold skin temp." (*Id.* at 61) Plaintiff departed from the nerve conduction study before the electromyography (EMG) was performed, but returned about a week later for the test. (*Id.* at 61-62) Dr. Sabetian found Plaintiff's EMG results were "[n]ormal with no denervation nor myopathy in [his] muscles." (*Id.* at 62)

In August 2011, Plaintiff had "no motor or sensory deficit." (Doc. 8-3 at 29) Dr. Nguyen determined that Plaintiff's strength and deep tendon reflexes were "intact bilaterally," and his strength was "5/5" in all extremities. (*Id.* at 44)

In October 2011, Plaintiff said his back pain and right leg pain was "becoming better." (Doc. 8-3 at 13) He reported he was exercising and walking "10-15 minutes." (*Id.*) Dr. Jones determined that Plaintiff's strength was "5/5" in his legs, but his right arm strength was reduced at "3/5." (*Id.*) The next month, Plaintiff reported he did not have any joint pain, swelling, or stiffness. (*Id.* at 18)

In March 2012, Plaintiff reported his low back pain was "not controlled" with pain medication. (Doc. 8-5 at 4) He denied having "lower extremity weakness, numbness, and tingling." (*Id.*) Dr. Espejo determined that Plaintiff had negative straight leg raise tests. (*Id.* at 6)

Plaintiff again had a nerve conduction study and EMG on his arms in June 2012. (Doc. 8-6 at 11-12) Dr. Sabetian determined the nerve conduction study results were "[n]ormal with normal bilateral medial and ulnar motor and sensory and radial sensory potential." (*Id.* at 12) Dr. Sabetian found "[n]o evidence of carpal tunnel syndrome" with the study. (*Id.*) In addition, Dr. Sabetian opined Plaintiff's EMG results were "[n]ormal with no denervation nor myopathy in muscles tested." (*Id.*)

In July 2012, Plaintiff reported "complete relief of his right radiculopathy," but he had "lumbar pain primarily in the right buttock area." (Doc. 8-6 at 80) He described "severe pain in his back with rising," and said he "really [had] to stretch out his back to get any kind of relief." (*Id.*) Susan Schaufelberger, NP, found Plaintiff's motor strength was "5/5" and his sensation was normal. (*Id.*)

In May 2013, Plaintiff had an MRI of his lumbar spine. (Doc. 8-5 at 59) Dr. Goud determined Plaintiff had "normal alignment of the lumbar vertebral bodies with no evidence of listhesis," and "[t]he vertebral body heights and intervertebral disc spaces [were] maintained." (*Id.* at 60) Dr. Goud found "moderate right neural foraminal narrowing at L4/L5 and mild left neural foraminal narrowing at L4/L5." (*Id.*)

In June 2013, Plaintiff told Dr. William Meyer that he "continue[d] to have… low back pain with improvement of right-sided leg numbness and tingling." (Doc. 8-5 at 63) Plaintiff said his back pain was "aggravated with standing and bending." (*Id.*) Dr. Meyer compared the results of Plaintiff's MRI with one from 2009 and found "some improvement in opening up of the canal and some opening of the lateral recess," and "the L5-S1 disc area [was] relatively normal if not completely normal." (*Id.*) In addition, Dr. Meyer determined that Plaintiff's strength was "5/5" in his extremities, with "decreased sensory" in the right leg. (*Id.*) Dr. Meye noted Plaintiff had "arthritis in his gingers and tenderness when squeezing the phalangeal joints and the knuckle joints." (*Id.*)

Dr. Anderson examined Plaintiff in September 2013, at which time Plaintiff describe "an insidious onset of low back and right shoulder pain." (Doc. 8-5 at 66) According to Dr. Anderson, Plaintiff reported: "Pain prevents him from walking more than 100 yards or sitting for more than 10 minutes. He is also not able to stand for more than 10 minutes at a time." (*Id.*) Further, Plaintiff said he had "limited functional strength" in the right arm. (*Id.*) Dr. Anderson observed that Plaintiff was able to walk without assistive devices. (*Id.*) He found Plaintiff had "discoloration of the right arm and hand with soft tissue swelling," and his arm was "diaphoretic and tender to palpation." (*Id.*) Dr. Anderson determined Plaintiff "demonstrate[d] fair fine finger motor control," and his grip strength was "4/5." (*Id.*) Further, Plaintiff had "limited range of motion of the shoulder with flexion decreased by 25% as well as abduction." (*Id.*) Dr. Anderson diagnosed Plaintiff with "complex regional pain of the right upper extremity," degenerative disc disease in the lumbar spine, failed back syndrome, and spondylosis. (*Id.*) He directed Plaintiff to "participate in range of motion and strengthening exercises of his upper extremities." (*Id.*)

At a follow-up visit later in September, Plaintiff complained of "significant pain" in his head, hand, and wrist. (Doc. 8-5 at 68) Dr. Anderson found Plaintiff's grip strength "improved," and he

"demonstrate[d] good fine finger motor control." (*Id.*) Plaintiff was able to "raise his arms over his head," though he had "pain on end range of motion." (*Id.*) Dr. Anderson diagnosed Plaintiff with "complex regional pain of the right upper extremity," degenerative disc disease in the lumbar spine, failed back syndrome, and spondylosis. (*Id.*)

At an examination on December 11, 2013 with Dr. Anderson, Plaintiff reported he had "significant pain in his low back and stiffness." (Doc. 8-7 at 24) Plaintiff described the pain as "usually between a 7 and an 8," but said it "goes down to 50%" when taking his prescription. (*Id.*) According to Dr. Anderson, Plaintiff demonstrated "tenderness on palpation of the left and right upper extremity along the rotator cuff muscles," as well as "some soft tissue swelling" in both arms. (*Id.*) Further, Dr. Anderson determined Plaintiff had "moderate tenderness on deep palpation of the lumbar paraspinal muscles." (*Id.* at 24) He recommended Plaintiff continue his current medications, and gave Plaintiff "a series of exercise[s] to perform to help his back pain and increase his mobility." (*Id.*)

Dr. Anderson examined again Plaintiff on December 26, 2013, at which time Plaintiff said he "did not take his pain medications and ha[d] been in very severe pain." (Doc. 8-7 at 3, 23) He reported "his pain level drops from an 8 [to] 5" when taking the medication. (*Id.*) Plaintiff told Dr. Anderson that he could "only sit for about 10 minutes at a time and stand for about 10 minutes at a time." (*Id.*) Upon examination, Dr. Anderson found Plaintiff's grip strength was 4/5 in and his "strength in the lower extremities" was "5/5." (*Id.*)

That same day, Dr. Anderson completed a residual functional capacity questionnaire. (Doc. 8-5 at 71-72) Dr. Anderson opined Plaintiff was able to sit, stand, or walk "less than 1/2 hour" at one time, and for "about 2 hours" total in an eight-hour day. (*Id.* at 71) In addition, he indicated Plaintiff could rarely carry up to 10 pounds, and never eleven pounds or more. (*Id.*) Dr. Anderson opined Plaintiff could "occasionally" use his hands for handling, but rarely for fine manipulation, pushing, or pulling. (*Id.*) Further, Dr. Anderson indicated Plaintiff could occasionally reach forward; rarely reach up or kneel; and never squat, crawl, or crouch. (*Id.*) Dr. Anderson believed the "[o]bjective signs of pain" included x-rays, lumbar spinal spasm, and spinal deformity. (*Id.* at 72) He opined Plaintiff had "marked" pain, and weakness was another "impairment-related physical limitation." (*Id.*) Dr. Anderson believed the earliest medically-supported date for these limitations to apply was 2006. (*Id.*)

9

**C. The ALJ's Findings in 2014**

Upon remand, the new ALJ evaluated Plaintiff's claims, beginning again at step one of the sequential evaluation. The ALJ found Plaintiff still had not engaged in substantial gainful activity since October 2, 2007. (Doc. 7-14 at 37) At step two, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, obesity, and upper extremity complex regional pain syndrome." (*Id.*) The ALJ found these impairments did not meet or medically equaled a Listing. (*Id.*) Next, the ALJ determined, "[a]fter careful consideration of the entire record," that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can perform frequent, but not constant, simple grasping and fine manipulations, cannot do power grasping or torqueing, and is unable to communicate in English.

(*Id.* at 38) With this residual functional capacity, the ALJ concluded at step four that Plaintiff was unable to perform any past relevant work. (*Id.* at 44) However, the ALJ found Plaintiff could perform the requirements of other jobs in the national economy that existed in significant numbers. (*Id.* at 45) Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act, from October 2, 2007 through the date of the decision, March 21, 2014. (*Id.* at 46)

## DISCUSSION AND ANALYSIS

Plaintiff contends that on remand, "the ALJ failed to abide by the law of the case or rule of mandate." (Doc. 11 at 7, emphasis omitted) To the extent the ALJ was permitted to re-evaluate his residual functional capacity, Plaintiff asserts also that the ALJ erred in evaluating the opinion of his treating physician, Dr. Anderson. (*Id.* at 10-11) On the other hand, Defendant contends the ALJ did not err by determining the residual functional capacity, and properly evaluated the opinion evidence. (*See* Doc. 14 at 6 at 12)

**A. Law of the Case and Rule of Mandate**

Recently, the Ninth Circuit determined that "the law of the case doctrine and the rule of mandate apply to social security administrative remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). Plaintiff contends the ALJ violated both doctrines when he examined the medical evidence and formulated a new residual functional capacity. (Doc. 11 at 7-10)

1. Law of the Case

"The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy*, 825 F.3d at 567 (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)).  Application of the doctrine by a court "is discretionary, not mandatory." *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991); *see also United States v. Mills*, 810 F.2d 907, 909 (9th Cir. 1987) (stating that law of the case is a discretionary doctrine and declining to apply the doctrine).  However, the Ninth Circuit has identified only five circumstances under which a court may depart from the law of the case: "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). "Failure to apply the doctrine of the law of the case absent one of the requisite conditions constitutes an abuse of discretion." *Id.* (citations omitted).

In *Stacy*, the Ninth Circuit observed there had been "two prior step 4 findings by ALJs that Stacy could not perform his past work." *Id.*, 825 at 567.  The Court noted that while the step four findings were not specifically affirmed by the district court in its review, the findings were "typically the type… that should not be reconsidered under the law of the case doctrine." *Id.*  However, the Court found the ALJ did not err in re-evaluating the step four findings where the ALJ heard "new evidence" at the hearing regarding the tasks Stacy performed in his past work. *Id.*  As a result of the new evidence, a vocational expert concluded Stacy could, in fact, perform his past relevant work as generally performed. *Id.*  The Ninth Circuit determined that "[g]iven the new evidence on remand, the district court did not abuse its discretion in declining to apply the law of the case doctrine." *Id.*

Similarly, here, there was new and "substantially different" evidence before the ALJ on remand. The record on remand included additional treatment notes and radiology lab reports related to the period under review by the ALJ in 2010.[4]  (*See, e.g.,* Doc. 7-12; Doc. 8-1 at 48-57)  In addition,

---

[4] Plaintiff submitted more than 190 pages of additional records—dated October 16, 2007 to September 15, 2010—to the Appeals Council on September 28, 2010.  (Doc. 7-12 at 2) The record also included medical evidence obtained while Plaintiff's second request for a hearing was before an ALJ in 2011 and additional evidence provided by Plaintiff after the remand. (*See, e.g.,* Doc. 8-1 at 2; Doc. 8-2 at 2, 53; Doc. 8-7 at 2, 18)

Plaintiff "had L4-5 and L5-S1 laminal foraminotomies and partial medial facetectonmies in November 2010." (Doc. 7-14 at 40)  The ALJ observed that after the surgery, Plaintiff "had full strength in all extremities with no sensory deficits and during a physical exam in October 2011, the claimant reported no musculoskeletal pain or weakness." (*Id.* at 41)  In light of the new evidence before the ALJ upon remand, the ALJ was entitled to re-evaluate Plaintiff's residual functional capacity.

### 2. Rule of Mandate

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *Stacy,* 825 F.3d at 567-68 (quoting *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995)).  Under the rule of mandate, a lower court receiving a mandate "'cannot vary it or examine it for any other purpose than execution.'"  *Cote*, 51 F.3d at 181 (citation omitted).  The Ninth Circuit explained that a "remand order must be read holistically." *Stacy*, 825 F.3d at 568.  Thus, the Court found lower courts are permitted "to reexamine any issue on remand that is not inconsistent with the mandate." *Id.*  Where a remand order does not "restrict" an ALJ to address *only* a specific deficiency, an ALJ may be permitted to review other findings related to a claimant's application.  *See id.*

Previously, this Court determined that it was "unclear to what extent the occupational base of light work [was] eroded by Plaintiff's additional limitations." (Doc. 7-16 at 55)  The Court found "the determination that Plaintiff could perform work in the national economy [was] not supported by substantial evidence," and the matter was remanded "for further proceedings consistent with [the Court's] decision. (*Id.* at 56)

Notably, the Appeals Council directed the ALJ to obtain additional evidence and ask a vocational expert questions that "reflect[ed] the specific capacity/limitations *established by the record as a whole*." (Doc. 7-16 at 65, emphasis added)  In addition, as in *Stacy*, the ALJ was faced with new evidence, and its potential impact upon the residual functional capacity.  The actions taken on remand by the ALJ—who did, in fact, review Plaintiff's ability to perform work in the national economy after formulating the residual functional capacity—were not inconsistent with the Court's mandate to conduct further proceedings.

### B. The ALJ's Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating

physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). Because the opinion of Dr. Anderson was contradicted by other physicians, such as Dr. Bobba, the ALJ was required to set forth specific and legitimate reasons for rejecting the opinion. Plaintiff contends the ALJ failed to meet that burden.

Addressing the opinion of Dr. Anderson, the ALJ indicated the opinion was given "little weight." (Doc. 7-14 at 43) The ALJ stated:

> In December 2013, Bradford Anderson, M.D. opined that the claimant could perform significantly less than sedentary work, with up to two hours of sitting and standing and walking a day (Ex. 32F). Dr. Anderson is a treater but his opinion is overly restrictive and based largely on the claimant's subjective reporting. Dr. Anderson's treatment notes do not have objective findings that would justify his extremely limited functional capacity assessment. I therefore give his opinion little weight.

(*Id.*) Notably, the Ninth Circuit has determined the opinion of a treating physician may be rejected for

13

each of the reasons articulated by the ALJ. *See, e.g., Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where the physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject an opinion predicated upon "a claimant's self-reports that have been properly discounted as not credible").

On the other hand, however, the ALJ failed to address the manipulative limitations assessed by Dr. Anderson in his opinion. Specifically, Dr. Anderson concluded Plaintiff could rarely carry up to 10 pounds and never carry eleven pounds or more. (Doc. 8-5 at 71-72) In addition, Dr. Anderson opined Plaintiff could "occasionally" use his hands for handling but rarely for fine manipulation, pushing, or pulling; occasionally reach forward; and rarely reach upward.[5] (*Id.*) The ALJ failed to address these limitations but rejected them by finding Plaintiff was able to perform light work as well as "frequent, but not constant, simple grasping and fine manipulations." (*See* Doc. 7-14 at 38) Because the ALJ failed to address the lifting and manipulative limitations identified by Dr. Anderson, the ALJ erred in evaluating the opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) ("[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs"); *Cotton v. Bowen*, 799 F.2d 1403, 1408-09 (9th Cir. 1986) (finding legal error where ALJ's findings completely ignored medical evidence without giving specific, legitimate reasons for doing so).

### C.  Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

---

[5] It may be that the ALJ intended to reject this opinion as inconsistent with the objective medical testing but he did not do so.

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ failed to identify specific and legitimate reasons for giving rejecting the opinion of Dr. Anderson related to Plaintiff's manipulative limitations.  These opinions are intertwined with the residual functional capacity determination.  Therefore, despite that this matter has a long and storied past and a final determination has been significantly delayed, the Court has no option but to remand the matter for the ALJ to re-evaluate the medical evidence to determine Plaintiff's physical residual functional capacity in particular as it relates to manipulative limitations, if any.  *See Moisa* , 367 F.3d at 886.

## CONCLUSION AND ORDER

Because the ALJ failed to apply the correct legal standards in evaluating the medical evidence and rejecting the opinion of Plaintiff's treating physician, the decision cannot be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.  Accordingly, the Court **ORDERS**:

1. The Commissioner's motion for summary judgment (Doc. 14) is **DENIED**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Jose Belmontes and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 27, 2017**                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE